DALE L. ALLEN, JR., SBN 145279
KEVIN P. ALLEN, SBN 252290
LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
San Francisco, California 94111
Telephone:    (415) 981-6630
Facsimile:    (415) 982-1634
Email: dallen@lowball.com
Email: kallen@lowball.com

Attorneys for Defendants
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT
(Sued as Bay Area Rapid Transit District) (hereinafter "BART");
KENTON RAINEY in his official capacity as CHIEF OF POLICE
FOR BART; JAMES CROWELL, individually and in his official
capacity as a Police Officer for BART; and MYRON LEE,
individually and in his official capacity as a Police Officer for BART

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS HILL, a personal representative of the ESTATE OF CHARLES HILL; The ESTATE OF CHARLES HILL,<br><br>            Plaintiff,<br><br>    vs.<br><br>BAY AREA RAPID TRANSIT DISTRICT, a municipal corporation; KENTON W. RAINEY in his official capacity as CHIEF OF POLICE for BAY AREA RAPID TRANSIT DISTRICT; JAMES CROWELL individually and in his official capacity as a Police Officer for BAY AREA RAPID TRANSIT DISTRICT; MYRON LEE individually and in his official capacity as a Police Officer for BAY AREA RAPID TRANSIT DISTRICT; DOES 1-50, inclusive; individually and in their official capacities as POLICE OFFICERS for BAY AREA RAPID TRANSIT,<br><br>            Defendant. | Case No. 4:12-cv-00372 DMR<br><br>**DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)**<br><br>**Date:  August 22, 2013**<br>**Time: 11:00 a.m.**<br>**Courtroom:  4, 3rd Floor (Oakland)**<br>**Judge: Hon. Donna M. Ryu**<br><br>**Trial Date:     November 12, 2013** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on August 22, 2013, at 11:00 a.m., in Courtroom 4 of the

above-entitled Court, located on the 3rd floor of 1301 Clay St. in Oakland, California, Defendants SAN

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx          Case No: 4:12-cv-00372 DMR

FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (Sued as Bay Area Rapid Transit District) (hereinafter "BART"), KENTON RAINEY in his official capacity as CHIEF OF POLICE FOR BART; JAMES CROWELL, individually and in his official capacity as a Police Officer for BART; and MYRON LEE, individually and in his official capacity as a Police Officer for BART (collectively "Defendants") will, and hereby do, move the Court for an order granting summary judgment or, in the alternative, summary adjudication, in their favor, and against Plaintiffs CHRIS HILL a personal representative of the ESTATE OF CHARLES HILL and The ESTATE OF CHARLES HILL ("Plaintiffs") with respect to the following causes of action in Plaintiffs' Complaint, pursuant to FRCP 56:

1. Excessive Force (Fourth Amendment) (42 U.S.C. § 1983) (First Cause of Action);

2. Unlawful Seizure (Fourth Amendment) (42 U.S.C. § 1983) (Second Cause of Action);

3. Unlawful Seizure (Fourteenth Amendment) (42 U.S.C. § 1983) (Second Cause of Action);

4. Due Process (Fourteenth Amendment) (42 U.S.C. § 1983) (Second Cause of Action);

5. Excessive Force (Fourth Amendment) (42 U.S.C. § 1983) (Second Cause of Action);

6. Excessive Force (Fourteenth Amendment) (42 U.S.C. § 1983) (Second Cause of Action);

7. Municipal Liability (*Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978)) (42 U.S.C. § 1983) (Third Cause of Action);

8. Survival Action (42 U.S.C. § 1983) (Fourth Cause of Action);

9. Wrongful Death Negligence (C.C.P. § 377.60 and § 377.61) (Fifth Cause of Action); and

10. Civil Code § 52.1 (Sixth Cause of Action).

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 56, on the grounds that no genuine issue of material fact exists as to the above-mentioned claims, and Defendants are entitled to judgment as a matter of law. Specifically, the first and fourth claims fail because the use of force was reasonable and protected by qualified immunity; the second cause of action fails because there is no individual plaintiff, Fourth Amendment violations are personal to the decedent, and siblings may not recover under the Fourteenth Amendment; the third cause of action fails because there is no unconstitutional custom, policy or practice; and the fifth and sixth causes of action fail because the use of force was reasonable.

This motion is further based on this Notice, on the Memorandum of Points and Authorities below, on the declarations of Lance Haight, Randall Gregson, and Kevin Allen filed herewith and all exhibits attached thereto, on the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

Pursuant to the Court's standing order (see paragraph 14) the parties have met-and-conferred about a Joint Statement of Undisputed Facts. That statement is filed herewith. All joint, undisputed facts are identified in the Statement of Facts, below. They are identified in parentheses following the given sentence, e.g., (JSUF # 1). All facts not so identified are disputed.

## STATEMENT OF RELIEF SOUGHT

Defendants seek an order granting summary judgment or, in the alternative, summary adjudication, in their favor, and against Plaintiff, with respect to the following portions of Plaintiffs' Complaint: the first cause of action (excessive force under the Fourth Amendment, per 42 U.S.C. § 1983); the second cause of action (various Fourth and Fourteenth rights under 42 U.S.C. § 1983); the third cause of action (*Monell* under 42 U.S.C. § 1983); the fourth cause of action (unspecified rights under 42 U.S.C. § 1983); the fifth cause of action (state-law wrongful-death negligence); and the sixth cause of action (Civil Code § 52.1).

Dated: July 25, 2013

LOW, BALL & LYNCH

By_____/s/_____Kevin P. Allen_____
DALE L. ALLEN, JR.
KEVIN P. ALLEN
Attorneys for Defendant
SAN FRANCISCO BAY AREA RAPID TRANSIT
DISTRICT (SUED AS BAY AREA RAPID TRANSIT
DISTRICT) (HEREINAFTER "BART"); KENTON
RAINEY IN HIS OFFICIAL CAPACITY AS CHIEF
OF POLICE FOR BART; JAMES CROWELL,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A POLICE OFFICER FOR BART;
AND MYRON LEE, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS A POLICE OFFICER
FOR BART

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                              Case No: 4:12-cv-00372 DMR

# TABLE OF CONTENTS

Page(s)

STATEMENT OF RELIEF SOUGHT ................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED ......................................................1

I.   INTRODUCTION ..........................................................................................1

II.   STATEMENT OF FACTS .............................................................................2

   A.   Defendants' Background ......................................................................2

   B.   Dispatch/Initial Contact ......................................................................2

   C.   Incident ................................................................................................3

   D.   Post-Incident .......................................................................................4

   E.   BART and its Police Department .........................................................4

   F.   BART Police Department Policies .......................................................4

   G.   BART Police Department Hiring, Training and POST Certification...........5

     1.   POST Standards and BART's Additional Requirements ...............5

     2.   BART's Continued Monitoring and Training .............................7

     3.   BART Police Department's History of Contacts and Force, Prior Complaints, and Internal Affairs Investigations ...............................................7

   H.   Procedural Status .................................................................................9

III.   LEGAL ARGUMENT ..................................................................................10

   A.   Standard of Review ...........................................................................10

   B.   Reasonable Force Used Against Decedent .........................................10

     1.   No Liability Against Lee, Due to Lack of Integral Participation .............11

     2.   No Liability Against Crowell and Lee, Due to Reasonable Force .........11

       a.   Nature of the Intrusion .............................................................12

       b.   Governmental Interest .............................................................12

       c.   Balancing .................................................................................13

     3.   Officers Crowell and Lee Entitled to Qualified Immunity .............14

     4.   No Pain and Suffering Damages ...............................................16

   C.   Chris Hill Not Entitled to Wrongful-Death Claim under 42 U.S.C. § 1983 ...............17

   D.   Chris Hill Not Entitled to Wrongful-Death Claim under State Law ...........18

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                 Case No: 4:12-cv-00372 DMR

# TABLE OF CONTENTS

E.  No Liability Under Civil Code § 52.1 ........................................................................18

F.  No *Monell* Liability Because No Unconstitutional Custom, Policy, or Practice ........................19

1.  BART Policies Are Consistent with Both Controlling Authority and a Regard for the Constitutional Rights of the Public. ................................................................................19

2.  BART's Custom is to the Adherence to Law, Restraint in the Use of Force, and Continuous Improvement. ................................................................................20

3.  BART's Training Program Exceeded POST Standards, and the Department Anticipated and Corrected Potential Shortcomings. ................................................................................21

G.  Punitive Damages ................................................................................22

1.  No Punitive Damages Under Federal Law ................................................................23

2.  No Punitive Damages Under State Law ................................................................23

IV.  CONCLUSION ................................................................................24

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

1

2                    <u>**U.S. SUPREME COURT**</u>

3   *Alderman v. United States*
        394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ........................ 18

4

5   *Ashcroft v. al-Kidd*
        131 S.Ct. 2074, 2083 (2011) ........................................................ 15

6   *Board of County Commissioners v. Brown*
        520 U.S. 397 (1997) ................................................................... 21

7

8   *Celotex Corp. v. Catrett*
        477 U.S. 317 (1986) ................................................................... 10

9   *City of Canton v. Harris*
        489 U.S. 378 (1989) ................................................................... 21

10

11  *City of Newport v. Fact Concerts, Inc.*
        453 U.S. 247 (1981) ................................................................... 22

12  *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*
        532 U.S. 424 (2001) ................................................................... 17

13

14  *Exxon Shipping Co. v. Baker*
        554 U.S. 471 (2008) ................................................................... 17

15  *Graham v. Connor*
        490 U.S. 386 (1989) ...................................................... 11-13, 15, 18

16

17  *Hafer v. Melo*
        502 U.S. 21 (1991) .................................................................... 19

18  *Harlow v. Fitzgerald*
        457 U.S. 800, 818 (1982) ............................................................ 14

19

20  *Kentucky v. Graham*
        473 U.S. 159 (1985) ............................................................... 19, 22

21  *Los Angeles v. Heller*
        475 U.S. 796 (1986) ................................................................... 20

22

23  *Monell v. Dept. of Social Services of City of New York*
        436 U.S. 658 (1978) ................................................ ii,, iii, 1, 9, 19, 20, 22

24  *Smith v. Wade*
        461 U.S. 30, 56, 103 S.Ct. 1625 (1983) ........................................ 17, 23

25

26  *State Farm Mut. Automobile Ins. Co. v. Campbell*
        538 U.S. 408, 416 (2003) ............................................................. 17

27  *U.S. v. Lanier*
        520 US 259 (1997) ................................................................. 17-18

28

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                        Case No: 4:12-cv-00372 DMR

TABLE OF AUTHORITIES

**UNITED STATES NINTH CIRCUIT COURT OF APPEALS**

*Bryan v. MacPherson*
   630 F.3d 805 (9th Cir. 2010) ................................................................. 12, 13

*Billington v. Smith*
   292 F.3d 1177 (9th Cir.2002) ................................................................. 14, 15

*Blankenhorn v. City of Orange*
   485 F. 3d 463, 481, n. 12 (9th Cir. 2007) ................................................. 11

*Davis v. City of Ellensburg*
   869 F.2d 1230 (9th Cir. 1989) ................................................................. 21

*Franklin v. Foxworth*
   31 F.3d 873 (9th Cir. 1994) ................................................................. 12

*Garcia v. United States*
   826 F.2d 806 (9th Cir.1987) ................................................................. 14, 15

*Gillette v. Delmore*
   979 F.2d 1342 (9th Cir. 1992) ................................................................. 19

*Hopkins v. Bonvicino*
   573 F.3d 752 (9th Cir. 2009) ................................................................. 11, 15

*Long v. County of Los Angeles*
   442 F.3d 1178 (9th Cir. 2006) ................................................................. 21

*Mattos v. Agarano*
   661 F.3d 433 (9th Cir. 2011) ................................................................. 13

*Meehan v. County of Los Angeles*
   856 F.2d 102 (9th Cir.1988) ................................................................. 20

*Meredith v. Erath*
   342 F.3d 1057 (9th Cir. 2003) ................................................................. 12

*Merritt v. County of Los Angeles*
   875 F.2d 765 (9th Cir. 1989) ................................................................. 21

*Moreland v. Las Vegas Metro. Police Dep't*
   159 F.3d 365 (9th Cir. 1998) ................................................................. 18

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*
   210 F.3d 1099, 1102 (9th Cir. 2000) ................................................................. 10

*Oviatt v. Pearce*
   954 F.2d 1470 (9th Cir. 1992) ................................................................. 21

*Reynolds v. County of San Diego*
   84 F.3d 1162 (9th Cir.1996) ................................................................. 14, 15

## UNITED STATES NINTH CIRCUIT COURT OF APPEALS (CONTINUED)

*Sandberg v. City of Torrance*
  456 F. App'x 711 (9th Cir. 2011) ............................................................................... 14, 15

*Scott v. Henrich*
  39 F.3d 912 (9th Cir. 1994) ....................................................................................... 13-15

*Smith v. City of Fontana*
  818 F.2d 1411 (9th Cir.1987) ......................................................................................... 18

*Smith v. City of Hemet*
  394 F.3d 689 (9th Cir. 2005) ........................................................................... 12,, 13, 15

*Ting v. U.S.*
  927 F.2d 1504 (9th Cir. 1991) ........................................................................................ 21

*Ward v. City of San Jose*
  967 F.2d 280 (9th Cir. 1992) .......................................................................................... 18

## UNITED STATES DISTRICT COURT

*Estate of Contreras ex rel. Contreras v. Cnty. of Glenn*
  725 F.Supp.2d 1151 (E.D. Cal. 2010)............................................................................ 16

*Cardinal v. Buchnoff*
  06CV72-MMA(BLM), 2010 WL 1337489, * 1 (S.D. Cal. Apr. 5, 2010)........................ 16

*Hirschfield v. San Diego Unified Port Dist.*
  08CV2103BTM(NLS), 2009 WL 3248101, * 3 (S.D. Cal. Oct. 8, 2009)........................ 16

*Rentz v. Spokane Cnty.,*
  438 F. Supp. 2d 1252 (E.D. Wash. 2006) ...................................................................... 18

## CALIFORNIA COURT OF APPEALS

*Beck v. State Farm Mutual Automobile Insurance Co.*
  (1976) 54 Cal.App.3d 347, 355. .................................................................................... 24

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                        Case No: 4:12-cv-00372 DMR

# TABLE OF AUTHORITIES

## **FEDERAL STATUTES**

42 U.S.C § 1983 .................................................................................. ii, iii, iv, 1, 9-11, 16-17, 22-23

Federal Rule of Appellate Procedure 32.1(a) ............................................................. 14

Federal Rules of Civil Procedure

    Rule 56............................................................................................................... ii
    Rule 56(c) ........................................................................................................ 10
    Rule 56(e) ........................................................................................................ 10

## **STATE STATUTES**

California Civil Code

    §§ 52.1(a) and (b) ......................................................................................... 18
    § 52.1 ............................................................................................... ii, iv, 1, 2, 9
    § 3294 ............................................................................................................. 23
    § 3294(a) ........................................................................................................ 23
    § 3294(c)(1) .................................................................................................... 23
    § 3294(c)(2) .................................................................................................... 23

California Code of Civil Procedure

    § 377.11 ........................................................................................................... 9
    § 377.30 ........................................................................................................... 9
    § 377.34 ......................................................................................................... 16
    § 377.60 ..................................................................................................... ii, 18
    § 377.61 ..................................................................................................... ii, 18

California Government Code § 818 ............................................................................ 22

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                 Case No: 4:12-cv-00372 DMR

## STATEMENT OF ISSUES TO BE DECIDED

This motion presents the following issues to be decided:

1. Whether the First and Fourth Causes of Action are duplicative;

2. Whether the Estate can recover for decedent's pain and suffering;

3. Whether Chris Hill may bring a wrongful-death claim under 42 U.S.C. § 1983;

4. Whether Chris Hill can recover for alleged Fourth Amendment violations;

5. Whether Chris Hill can recover for loss of familial relationship;

6. Whether Officer Lee integrally participated in the use of force against decedent;

7. Whether Officer Crowell used reasonable force against decedent;

8. Whether Officers Lee and Crowell are entitled to qualified immunity as to the Complaint's Section 1983 claims;

9. Whether BART possesses an unlawful custom, policy, or practices that was the moving force behind any alleged constitutional violation;

10. Whether suing an individual defendant in his official capacity is akin to suing the public entity;

11. Whether Defendants are liable under Civil Code 52.1; and

12. Whether Defendants are liable for wrongful-death negligence.

## I. INTRODUCTION

The Fourth Amendment survival claim for excessive force (First Cause of Action) fails because the use of force was reasonable and protected by qualified immunity.

The Fourth and Fourteenth Amendment wrongful-death claims (Second Cause of Action) fail because there is no individual plaintiff, Fourth Amendment violations are personal to the decedent, and siblings may not recover under the Fourteenth Amendment.

The *Monell* claim (Third Cause of Action) fails because there is no unconstitutional custom, policy or practice.

The unspecified 42 U.S.C. § 1983 survival claim (Fourth Cause of Action) is duplicative to the First Cause of Action. It fails for the reason as the First: reasonable use of force; and qualified immunity.

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                    Case No: 4:12-cv-00372 DMR

The state-law wrongful-death negligence claim, as well as the survival Civil Code § 52.1 claim (the Fifth and Sixth Causes of Action) both fail because the use of force was reasonable.

## II. STATEMENT OF FACTS

### A. Defendants' Background

Officer James Crowell became a sworn peace officer in February 2009. (JSUF # 1). Hired by Sacramento County Sheriff's Department, he transferred to BART Police Department ("Department") in May 2010 (JSUF # 2).

Myron Lee became a sworn peace officer in March 2005. (JSUF # 3). Hired by BART Police Department, he has worked for the Department ever since. (JSUF # 4).

### B. Dispatch/Initial Contact

On Sunday, July 3, 2011, BART police Officer Crowell was on-duty, assigned to patrol Civic Center, 16th St. & Mission, and 24th St. & Mission stations. (JSUF # 5). On his duty belt, he had a baton, pepper spray, Taser, and firearm. (*Crowell Dep. Tr.*, 59:2-9). Partnered with Officer Lee, Officer Crowell was working the 2 PM to midnight shift. (JSUF # 6). While at Powell St. station, he and Lee received a radio call from dispatch. (JSUF # 7). Dispatch reported possibly intoxicated white male, on the platform at Civic Center station. (JSUF # 8). Dispatch also provided a secondary call, with an update: the male appeared to be agitated. (*Id.*, at 61:22-62:4).

Officers Crowell and Lee proceeded to Civic Center station, arriving on BART. (JSUF # 9). Stepping off the train bound for SFO/Daly City, Officer Crowell walked onto the platform, and immediately saw the man matching dispatch's description. (JSUF # 10). The man stood about 30 feet away (JSUF # 11). Facing the man, Officer Crowell saw him holding a clear, glass bottle with a red cap, about 750 ml in size. (JSUF # 12). Crowell thought it was a bottle of vodka. (JSUF # 13). The man held it with one hand. (JSUF # 14).

Between the officers and Mr. Hill, there was a cement bench with at least one person sitting on it. (JSUF # 15). The distance between Mr. Hill and that person was 3-5 yards. (JSUF # 16).

///

///

///

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                    Case No: 4:12-cv-00372 DMR

## C.    **Incident**

Officer Lee proceeded towards the man (later identified as Charles Hill); Officer Crowell approached from the right. (JSUF # 17).[1] Officer Crowell then motioned to Mr. Hill -- in order to get his attention and talk to him. (JSUF # 18). He also called out to him. (JSUF # 19).

As Crowell and Lee approached Mr. Hill, he stepped backwards (while still facing them) (JSUF # 20). Hill stepped backwards 5-6 steps, towards the tunnel (and away from the officers). (JSUF # 21). As he backpedalled, the officers stepped forward. (JSUF # 22). At this point, Officer Crowell lost sight of Officer Lee, as there was a sign between them. (JSUF # 23).

While they approached, Mr. Hill threw his glass bottle in the officers' direction. (JSUF # 24). It hit the metal sign between the two officers; Crowell felt the spray of the liquid. (JSUF # 25). Officer Lee stepped to the right (to use the metal sign as cover) when he slipped. (JSUF #26). He fell on his left-side, with his head facing the northbound platform (and away from Officer Crowell). (JSUF # 27).

After throwing the bottle, Mr. Hill stepped backwards another 5-6 steps. (JSUF # 28). He then stopped. (*Crowell Dep. Tr.*, at 84:5-7). Officer Crowell proceeded to lose sight of Mr. Hill, because Hill was behind a pillar. (JSUF # 29). When Crowell looked around the pillar, he saw Hill coming towards him. (JSUF # 30). Hill was moving fairly rapidly; he had taken 5-6 steps in Crowell's direction. (JSUF # 31). It was at this time Officer Crowell saw a knife (or other sharp object) in Mr. Hill's hand. (JSUF #32 ). Hill was holding the knife in his right hand, with his right hand extended away from his body, at waist high level and with the knife pointing outward from Hill's body. (JSUF # 33). He maintained a fist-like grip on the blade handle. (JSUF # 34).

Upon seeing the knife, Officer Crowell drew his firearm and ordered Mr. Hill to drop the knife. (JSUF # 35). Mr. Hill did not respond to the command: he did not alter his demeanor or his actions. (JSUF # 36). Instead, he continued moving towards Crowell, elevating his shoulder towards a throwing motion (like throwing a baseball). (JSUF # 37). Officer Crowell thought Hill was going to throw the knife. (JSUF # 38). As Hill's arm was cocked and starting to come forward (as in a baseball throw), Officer Crowell fired. (JSUF # 39). He fired with about 15 feet between himself and Hill. (JSUF # 40).

---

[1] Throughout this Motion, Mr. Charles Hill will be referred to as "Mr. Hill" or "decedent."

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                    Case No: 4:12-cv-00372 DMR

He fired three shots. (JSUF # 41). After the third shot, Mr. Hill fell to the ground. (JSUF # 42).

The incident was partially captured on station video. (*Declaration of Kevin P. Allen*, ¶ 5). A copy of that video is enclosed with Defendants' papers.

Officer Lee heard the gun shots: they occurred either while he was falling or while he was pushing himself up from the ground. (JSUF # 43).Lee did not see Mr. Hill between the time Lee fell and the time he heard the shots. (JSUF # 44).

### D.    Post-Incident

Upon getting back to his feet, Officer Lee approached Mr. Hill and rolled him over to his back. (JSUF # 45). Lee applied pressure on the wound. (JSUF # 46). Officer Crowell also approached. (JSUF # 47). Paramedics arrived and took over. (JSUF # 48).

### E.    BART and its Police Department

As of July 3, 2011, Kenton Rainy was the Chief of the BART Police Department. (*Declaration of Lt. Lance Haight*, ¶ 10). At that time, the chain of command was as follows: officers reported to sergeants, who reported to lieutenants, who in turn reported to deputy chiefs. (*Id.*) Those deputy chiefs, the lieutenant assigned to internal affairs, and the civilian manager serving as budget coordinator, all reported directly to Chief Rainey. (*Id.*)

### F.    BART Police Department Policies

At the time of the incident, BART used policies developed by Lexipol. (*Declaration of Lt. Gregson*, ¶ 12). Lexipol is a commercial company that provides policies and procedures for police departments in California. (*Id.*) Those policies included: (1) Use of Force (Policy 300); (2) Use of Force Review Board (Policy 302); (3) Shooting Policy (Policy 304); (4) Officer-Involved Shooting (Policy 310); (5) Firearms (Policy 312); (6) Officer Response to Calls (Policy 316); (7) Search and Seizure (Policy 322); (8) Report Preparation (Policy 344); and (9) Death Investigation (Policy 360). (*Id.*).

### G.    BART Police Department Hiring, Training and POST Certification

#### 1.    POST Standards and BART's Additional Requirements

POST is a state-wide, quasi-governmental organization composed of law enforcement executives and advisors. POST sets forth standards for the basic and continued training of peace officers, and certifies local law-enforcement agencies and their officers as in compliance with those

DEFENDANTS'AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                   Case No: 4:12-cv-00372 DMR

standards. In addition, POST reviews and certifies training courses developed by local law-enforcement agencies as in compliance with POST standards and expectations. POST conducts regular audits of local agencies and officers to determine compliance, and certifies those agencies and officers that are in compliance. (*Declaration of Lt. Randall Gregson*, ¶ 3.)

POST sets forth the following basic training and fitness requirements for a peace officer and its employing agency to receive POST certification: (a) successful completion of a 664-hour (six month), POST-certified police academy course, which includes 42 POST "Learning Domains," i.e., topics of study, including defensive tactics, racial profiling, investigatory detentions, the laws of arrest and the use of force; (b) approval of the candidate's medical condition and psychological condition, each by a licensed physician; (c) approval of the candidate's personal history and background for fitness to be a peace officer, at which point the candidate may be sworn as a peace officer; (d) ten weeks of field training with a qualified Field Training Officer for newly appointed officers; (e) biannual update training for every officer who serves in a patrol function. The update training consists of 24 hours of continuing education, of which 14 hours are devoted to "perishable skills," i.e., skills that may deteriorate over time if not refreshed, as follows: four hours of Arrest Control Techniques, a form of defensive tactics including the proper use of force; four hours of non-pursuit operation of a motor vehicle; four hours of Tactical Firearms and/or use-of-force options; and two hours of Tactical Communications. (*Id.*, ¶ 4.)

The POST-certified police academy attended by defendant James Crowell required 953 hours for successful completion. (*Id.*, at ¶ 5). The POST-certified police academy attended by defendant Myron Lee required 878 hours for successful completion. (*Id.*)

Upon completion of twelve-month probation, including BART's Field Operations Concentrated Uniform Session ("FOCUS") session, and field training, an officer has one year to complete the necessary paperwork for a POST Basic Certificate. (*Id.*, ¶ 4.) An officer may also choose to obtain additional certificates, which are awarded based on an officer's further education and experience. (*Id.*, ¶ 6.) The Department encourages its officers to seek and obtain these certificates, which promote the officer's advancement within the Department. (*Id.*) At the time of the incident, Officer Lee possessed his Intermediate Certificate. (*Id.*)

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx     Case No: 4:12-cv-00372 DMR

As of 2011, POST conducted annual audits of POST-certified agencies to determine whether the officers hired in the respective previous year meet the requirements set forth above. (*Id.*, at ¶ 7). POST also conducted biannual audits of POST-certified agencies to determine whether all officers meet not only the basic requirements but also the update-training requirements. (*Id.*) The last POST audit conducted at the BART Police Department before July 3, 2011 took place in April 2011. (*Id.*) At the April 2011 audit, POST determined that the Department and all of its officers, including Officers James Crowell and Myron Lee, were in compliance with POST standards. (*Id.*)

In addition to POST-required standards, the BART Police Department requires that all newly hired officers, whether or not they have prior police experience, to complete the Department's Field Operations Concentrated Uniform Session ("FOCUS"). (*Id.*, at ¶ 8). This three-week course provides a concentrated overview and refresher of basic police procedure as well as an introduction to the BART Police Department's own methods. (*Id.*) FOCUS includes two full days of training on the use of defensive weapons, a topic that includes defensive tactics and the use of force. (*Id.*) It includes one full day on the laws of arrest, and one full day on firearms and less-lethal weapons. (*Id.*) Officers Crowell and Lee all completed the FOCUS program upon their hire with the BART Police Department. (*Id.*) In addition, the BART Police Department makes the hiring of new officers conditional upon the successful completion of a polygraph examination regarding the applicant's personal background and history. (*Id.*) This requirement is above and beyond that mandated by POST. (*Id.*)

As noted in the paragraph above, POST certification requires ten weeks of field training for newly appointed officers. (*Id.*, at ¶ 9). The BART Police Department sets additional requirements: newly appointed officers must complete 12 to 20 weeks of field training with a qualified Field Training Officer. (*Id.*) The duration of the field training depends on the officer's progress and completion of the required examinations. (*Id.*) In addition, the Department requires that laterally hired officers, i.e., officers with prior experience at other agencies, complete at least ten weeks of BART field training. (*Id.*) James Crowell and Myron Lee both successfully completed the FTO program upon their respective hires with the BART Police Department. (*Id.*, at ¶ 10).

///

///

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                    Case No: 4:12-cv-00372 DMR

## 2. BART's Continued Monitoring and Training

The BART Police Department has policies requiring the documentation and review of incidents in which less-lethal or lethal force is used and/or displayed by officers. (*Declaration of Lt. Haight*, ¶ 3). A file of these reviews and documentation are maintained in the Office of Internal Affairs and/or in a BART computer database. (*Id.*) The Department policies mandating such review and documentation include: Policies 300, 302, and 304. (*Id.*) As of July 3, 2011, these policies were communicated to BART Police Officers via hard copy, upon the officer's hire. (*Id.*) Any policy changes or updates are also provided to employees in hard-copy form as the change or update takes effect. (*Id.*)

Sergeants in the BART Police Department give daily briefings to their officers. In those briefings, sergeants discuss new and/or updated case law and policies. (*Declaration of Lt. Gregson,* at ¶ 12). Additionally, copies of any Lexipol updates are provided to each officer in the Department in hard-copy. (*Id.*)

## 3. BART Police Department's History of Contacts and Force, Prior Complaints, and Internal Affairs Investigations

The Department's Office of Internal affairs has access to a departmental database storing information on all BART Police contacts, crime contacts and felony contacts since 2005. (*Declaration of Lt. Lance Haight*, ¶ 4). A "Call for Service" means any incident involving BART Police, whether or not a crime was alleged to have occurred. (*Id.*) For the seven years leading up to (and including the incident), BART Police recorded 272,885 calls for service: 2487 felony arrests; 7449 misdemeanor arrests; and 44,369 citations. (*Id.*)

The Department's Office of Internal Affairs maintains logs of incidents in which less-lethal or lethal force was used or displayed by officers. (*Declaration of Lt. Lance Haight*, ¶ 5). It has done so since 2005. (*Id.*) For the seven years leading up (and including the incident): BART Police displayed a firearm in low/cover position 260 times; drew and pointed at a suspect 159 times; and drew, pointed and discharged a firearm 4 times. (*Id.*)

From his date of hire (May 19, 2010) until July 2, 2011, former BART Police Officer James Crowell used or displayed one of the force options above-described as follows: displayed a firearm in low/ready position 1 time; drew and pointed a firearm at a suspect 1 time; drew, pointed and discharged

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                    Case No: 4:12-cv-00372 DMR

his firearm 0 times. (*Id.*)

From his date of hire (September 7, 2004) until July 2, 2011, BART Police Officer Myron Lee used or displayed one of the force options above-described as follows: displayed a firearm in low/ready position 3 times. (*Id.*)

The BART Police Department adheres to California Penal Code § 832.5, which requires that the Department have a procedure for investigating complaints made by the public, and that it make a written description of the procedure available to the public. (*Declaration of Lt. Lance Haight*, ¶ 6).

An Internal Affairs investigation conducted by the BART Police Department results in one of the following findings for each allegation, which have the following meanings:

a.     Exonerated: Action complained about did occur, but was lawful, justified, and proper.

b.     Not sustained: There is insufficient information/evidence to prove or disprove the allegation.

c.     Sustained: The allegation is supported by sufficient information and/or evidence.

d.     Unfounded: The allegation is false; alleged act did not occur, employee or BART Police Department was not involved.

e.     No Finding: The complaining party and/or witness fails to cooperate after the investigation had commenced; the complainant withdraws the complaint; or the complainant is no longer available.

f.     Policy Complaint: the complaint pertains to an established policy that was properly handled or performed by an employee. (*Declaration of Lt. Lance Haight*, ¶ 7).

The Department's Office of Internal Affairs maintains a record of all citizen complaints and ensuing investigations since 2005. (*Declaration of Lt. Lance Haight*, ¶ 8). As of July 3, 2011, the Department received a total of 166 such complaints, broken-down as follows: 22 complaints (2011 through July 3); 41 complaints (2010); 37 complaints (2009); 13 complaints (2008); 20 complaints (2007); 20 complaints (2006); and 13 complaints (2005). Of the 166 complaints: 35 were determined to be "exonerated;" 14 were determined to have "no finding;" 39 were "not sustained;" 16 were determined to be a "policy complaint;" 35 were "sustained;" and 27 were determined to be "unfounded." (*Id.*)

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                        Case No: 4:12-cv-00372 DMR

According to records maintained by the Office of Internal Affairs, as of July 3, 2011, no citizen complaints had been reported to the Department regarding James Crowell, and no citizen complaints had been reported to the Department regarding Myron Lee. (*Declaration of Lt. Lance Haight*, ¶ 9). The Office of Internal Affairs has no record of any citizen complaints against James Crowell or Myron Lee prior to July 3, 2011. (*Id.*)

**H.    Procedural Status**

Plaintiffs CHRIS HILL a personal representative of the ESTATE OF CHARLES HILL and The ESTATE OF CHARLES HILL ("Plaintiffs") filed their Complaint on January 25, 2012. (Docket No. 1, *Complaint*). Paragraph 3 to the Complaint identifies Mr. Hill as "the surviving brother of decedent, CHARLES HILL. Plaintiff appears as personal representative of the ESTATE OF CHARLES HILL pursuant to California Code of Civil Procedure 377.30." (*Id.*, at ¶ 3). Paragraph 4 to the Complaint states that "Plaintiff CHRIS HILL is the successor-in-interest to the ESTATE OF CHARLES HILL, including the manner in which successor-in-interest is defined by California Code of Civil Procedure section 377.11 and elsewhere, and is entitled to maintain causes of action which survive the death of CHARLES HILL under California Code of Civil Procedure Section 377.30." (*Id.*, at ¶ 4).

The Complaint names three defendants: BART, Chief Rainey, Officer Crowell and Officer Lee. (*Id.*, at ¶¶ 6-9). It sues Chief Rainey in his official capacity. (*Id.*, ¶ 7). It sues Lee and Crowell in their individual and official capacities. (*Id.*, at ¶¶ 8-9).

The first, third, fourth, and sixth causes of action are all survival claims, brought by the Estate of Charles Hill. The first and fourth concern excessive force, the third concerns *Monell* liability, and the sixth concerns state-law Civil Code § 52.1. The second and fifth causes of action are wrongful-death claims, under 42 U.S.C. 1983 and California state-law.

The Complaint seeks punitive damages against Chief Rainey, Officer Crowell, and Officer Lee, under both state and federal law. (*Id.*, at Prayer, ¶ 4).

**I.    Meet-and-Confer**

Pursuant to the Court's Standing Order -- see Paragraph 14 -- Defendants prepared a Joint Statement of Undisputed Facts, and emailed it to Plaintiff for his review and approval. (Allen Declaration, ¶ 6). Defendants emailed it on Monday, July 15, 2013, a full 3 days before the July 18th

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                    Case No: 4:12-cv-00372 DMR

filing deadline for Defendants' Motion. (*Id.*) Defendants requested Plaintiff respond by 5:00 PM on Wednesday, July 17th. (*Id.*) As of 5:45 PM on July 18th, Defendants have not received a response. (*Id.*) Unable to wait any longer, Defendants finished preparing this Motion, and filed it. (*Id.*) All the facts above treated as disputed.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Standard of Review</u>

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). It pierces the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence for its claims to create a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to meet its initial burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

In opposing a motion for summary judgment, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e). In the absence of such a response, "summary judgment, if appropriate, shall be entered against the adverse party." *Id.*

### B. <u>Reasonable Force Used Against Decedent</u>

The first and fourth causes of action are both survival actions brought under 42 U.S.C. § 1983, brought by the Estate of Charles Hill (on decedent's behalf). The first cause of action alleges excessive force under the Fourth Amendment, while the fourth cause of action alleges violation of unspecified civil rights. Because the fourth cause of action is generic -- and because Fourth Amendment excessive force is already alleged in the first cause of action -- the fourth cause of action is duplicative. Because it is duplicative, it should be dismissed. Alternatively, it should be treated the same as the first cause of action.

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                    Case No: 4:12-cv-00372 DMR

Excessive force fails against Officer Lee and Officer Crowell. It fails against Lee due to lack of integral participation. It fails against Lee and Crowell because the force was reasonable, and because they are entitled to qualified immunity.

The fourth cause of action also specified relief for pain and suffering (while the first cause of action only generally seeks relief). The Estate is not entitled to pain and suffering damages because state law governs recoverable damages in survival claims, and California law prohibits such damages.

### 1. No Liability Against Lee, Due to Lack of Integral Participation

"An officer's liability under section 1983 is predicated on his integral participation in the alleged violation." *Blankenhorn v. City of Orange*, 485 F. 3d 463, 481, n. 12 (9th Cir. 2007) (citations omitted). Such participation requires "some fundamental involvement in the conduct that allegedly caused the violation." (*Id.*) In other words, a police officer's being a mere bystander to his colleagues' conduct is insufficient to support a § 1983 claim. *Hopkins v. Bonvicino,* 573 F.3d 752, 770 (9th Cir. 2009).

There is no evidence that Officer Lee was fundamentally involved in decedent's shooting. He did not: (1) draw his firearm at the time of the incident; (2) call-out "knife" or otherwise cause Officer Crowell to draw his firearm; or (3) cause Crowell to fire on decedent. Indeed, Officer Lee had no participation in the shooting. He happens to have fallen down at that moment in time, and only heard the gun-shots. He did not know Officer Crowell had drawn his firearm, or the need for the force (i.e. decedent's knife and imminent knife-throw).

For these reasons, Officer Lee did not integrally participate in the use of force against decedent. He is entitled to dismissal on this cause of action.

Alternatively, Officer Lee is entitled to dismissal for the same reasons as Officer Crowell: the use of force was constitutionally reasonable, and protected by qualified immunity.

### 2. No Liability Against Crowell and Lee, Due to Reasonable Force

In *Graham v. Connor*, 490 U.S. 386 (1989), the U.S. Supreme Court held that excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham, supra,* at 388. *Graham* made clear that use of force analysis is the same whether deadly or non-deadly force is employed. (*Id.*, at 395) ["Today we make explicit what was implicit in *Garner*'s analysis, and hold that all claims that law enforcement officers have used excessive force—deadly or not—in the

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                    Case No: 4:12-cv-00372 DMR

1  course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the

2  Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process"

3  approach."].

4        Determination of the reasonableness of the force used requires "careful balancing of the nature

5  and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

6  governmental interest at stake." *Id.* at 396. Put another way, "balance the amount of force applied

7  against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). In making this

8  determination, "[t]he "reasonableness" of a particular use of force must be judged from the perspective

9  of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, *supra*, at

10  396. The Supreme Court further counseled that "[t]he calculus of reasonableness must embody

11  allowance for the fact that police officers are often forced to make split-second judgments—in

12  circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is

13  necessary in a particular situation." (*Id.*, at 396-397).

14  **a.**    **Nature of the Intrusion**

15        Officer Crowell discharged his firearm at Mr. Charles Hill. On the "quantum of force" scale, the

16  use of deadly force is the most significant intrusion on Fourth Amendment interests.

17  **b.**    **Governmental Interest**

18        The Ninth Circuit has held that "[u]nder *Graham v. Connor*, we evaluate the government's

19  interest in the use of force by examining three core factors, the severity of the crime at issue, whether

20  the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

21  resisting arrest or attempting to evade arrest by flight." *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th

22  Cir. 2010) (en banc) (citing *Graham*, 490 U.S. at 396). These factors are not, however, exclusive:

23  "whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*,"

24  should be considered. *Bryan*, *supra*, at 826 (citing *Franklin v. Foxworth*, 31 F.3d 873, 976 (9th Cir.

25  1994). The *Graham* factors existed here, to create a strong government interest in Crowell's use of

26  force. Other factors existed as well.

27        The Ninth Circuit has made plain -- repeatedly -- the importance of the threat to officer safety:

28  "the most important factor under *Graham* is whether the suspect posed an immediate threat to the safety

-12-

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx          Case No: 4:12-cv-00372 DMR

of the officers or others." *Bryan*, *supra*, at 826 (citing *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). Officers Crowell and Lee faced a life-threatening danger to their safety, and the safety of the civilians in the station. Charles Hill had already thrown his glass bottle at the officers, and now he possessed a knife. He had also raised that knife (despite an order to drop it), and was approaching the officers with it. Hill had further raised his arm into a throwing motion, about to throw the knife when Crowell fired. Indeed, he still managed to throw the knife, despite Crowell firing.

The initial crime to which officers responded (drunk in public) was non-violent. By the time Officer Crowell fired, however, the alleged crimes were decidedly different. By that time, Chris Hill had committed: (1) assault with a dangerous or deadly weapon (throwing the glass bottle at the officers); and (2) assault with a deadly weapon (about to throw the knife).

Non-*Graham* factors also demonstrate the governmental interest: warnings, and lack of alternative means. The Ninth Circuit has consistently recognized these factors. *Bryan, supra*, at 831; *Mattos v. Agarano,* 661 F.3d 433, 445 (9th Cir. 2011) (en banc). Officer Crowell told Charles Hill to drop the knife. Hill did not so (and instead presented more of a threat by continuing forward, with his arm raised).

Crowell also did not have other alternative means. He was about to have a deadly weapon thrown at him. He was on a platform with no cover, and his other available weapons (baton, pepper spray, and Taser) were ineffective given Hill's distance (15 feet). Even assuming, *arguendo*, such other means were available, Crowell was not required to use them. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ["the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them … Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."] (citations omitted).

### c. <u>Balancing</u>

The last *Graham* step is to balance the level of force here against the government interest at stake, and determine if the force is justified. Officer Crowell deployed his firearm against an individual who had: (1) already thrown a glass bottle at him; (2) refused a command to drop the knife; (3) continued walking forward after being commanded to drop the knife; and (4) wound up and  was ready

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION;
MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                    Case No: 4:12-cv-00372 DMR

to throw the knife, even after being commanded to stop. Officer Crowell also deployed his firearm while the individual was 15 feet away: such a distance that only his firearm could stop the threat.

Officer Crowell's deployment is consistent with *Graham* and Ninth Circuit precedent. See *Smith v. City of Hemet, supra,* which is instructive: "where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." *Smith*, *supra*, at 704. Comparison to other Ninth Circuit cases -- where deadly force was found reasonable -- is also illuminating. See *Garcia v. United States*, 826 F.2d 806 (9th Cir.1987); *Scott*, *supra*; *Reynolds v. County of San Diego*, 84 F.3d 1162, 1168 (9th Cir.1996); *Billington v. Smith*, 292 F.3d 1177, 1185 (9th Cir.2002); and *Sandberg v. City of Torrance,* 456 F. App'x 711 (9th Cir. 2011).[2] The threat facing Officer Crowell was at least equal to (if not greater than) the threats facing the officers in those situations.

*Garcia* held deadly force reasonable where the plaintiff attacked a border patrol agent with a rock and stick. *Garcia*, *supra*, at 808, 812. *Scott* held force reasonable where a suspect points a gun at officers. *Scott*, *supra*, at 914-916. *Reynolds* held deadly force reasonable where a suspect, who had been behaving erratically, swung a knife at an officer. *Reynolds*, *supra*, at 1168. *Billington* held the force reasonable where a suspect violently resisted arrest, physically attacked the officer, and grabbed the officer's gun. *Billington*, *supra*, at 1185. Lastly, *Sandberg* found deadly force reasonable where suicidal decedent brandished a knife and charged at officers. *Sandberg*, *supra*, at 713.

Just as the use of deadly force was reasonable and lawful in those cases, it was reasonable here. "The actions of law enforcement are given deference … to the extent that we will not condemn reasonable tactical decisions with the benefit of hindsight." *Sandberg*, *supra*, at 714. The Estate's excessive force claim should be dismissed.

### 3. Officers Crowell and Lee Entitled to Qualified Immunity

In the alternative, Officers Crowell and Lee are entitled to qualified immunity for Crowell's discharge of his firearm. Public officials "generally are shielded from liability for civil damages insofar

---

[2] *Sandberg* is an unpublished opinion. Defendants cite it pursuant to Federal Rule of Appellate Procedure 32.1(a), which states "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as unpublished, not for publication, nonprecedential, not precedent, or the like; and (ii) issued on or after January 1, 2007."

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                                                Case No: 4:12-cv-00372 DMR

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In analyzing a police officer's assertion of qualified immunity, the court must determine: (1) whether there was a violation of a constitutional right, and (2) whether the right was clearly established such that a reasonable officer would understand his conduct violate that right. If the alleged conduct violated a constitutional right, then the Court must determine "whether the right was clearly established at the time of the alleged unlawful action." *Hopkins v. Bonvicino*, 573 F.3d 757, 762 (9th Cir. 2009) (internal citation and quotation omitted). "A right is clearly established if a reasonable official would understand that what he is doing violates that right. If the right is not clearly established, then the officer is entitled to qualified immunity." (*Id.*) The U.S. Supreme Court has explained that while it "does not require a case directly on point . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (internal citations). The *al-Kidd* Court also stressed that it had repeatedly told courts, the Ninth Circuit in particular, not to define clearly established law at a high level of generality. *Id.*, at 2084. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id*.

As discussed above, Officer Crowell's discharge of his firearm, in self-defense, was reasonable under *Graham*. Therefore, no constitutional violation took place. Even if a violation did occur, Officers Crowell and Lee are entitled to qualified immunity because the right at issue -- whether it was excessive force to discharge a firearm at someone about to throw a knife (i.e. posing a deadly threat) -- was not clearly established at the time of the incident (July 3, 2011).

Officer Crowell and Officer Lee's entitlement to qualified immunity stems from *Smith v. City of Hemet*, and the other deadly force case authority cited above (*Garcia*; *Scott*; *Reynolds*; *Billington*; and *Sandberg*). In a legal environment where the Ninth Circuit has unambiguously stated "where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force," no reasonable officer in Officer Crowell's position would have known his use of force was excessive. Not when, consistent with *Smith*, Crowell was confronted with an individual armed with a knife, who had already thrown a glass bottle, who refused a command to drop the knife, and who

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                        Case No: 4:12-cv-00372 DMR

continued towards the officers (and raised his arm to throw the knife) even after the command to drop it. This was a textbook definition of an officer being threatened by a suspect. The reasonableness of any legal mistake by Crowell is highlighted by *Garcia* and the other above-cited Ninth Circuit cases. Given that all the officers in those cases faced situations the same as (if not less dangerous) than Crowell's -- and all their force was found reasonable -- it is reasonable for Crowell to have thought his force was lawful as well.

For these reasons, Officers Crowell and Lee are entitled to qualified immunity as to the Estate's excessive force claim. It should be dismissed.

### 4. No Pain and Suffering Damages

Assuming, *arguendo*, the Estate's excessive force claim survives summary judgment, its claim for pain and suffering damages should be dismissed.

"Section 1983 does not address survivor claims or any appropriate remedies. If a civil rights statute is deficient in the provisions necessary to furnish suitable remedies, courts must look to applicable state law." *Estate of Contreras ex rel. Contreras v. Cnty. of Glenn*, 725 F. Supp. 2d 1151, 1155 (E.D. Cal. 2010). When looking to state-law, however, it "may not be applied when it is inconsistent with the constitution and laws of the United States." (*Id.*) In other words, the dispositive question is whether California's survivor statute – C.C.P. § 377.34 – conflicts with 42 U.S.C. § 1983. Section 377.34 bars pain and suffering damages in survival actions.

Because this question has not been addressed by the Ninth Circuit, the question falls to the District Courts. *Hirschfield v. San Diego Unified Port Dist.*, 08CV2103BTM(NLS), 2009 WL 3248101, * 3 (S.D. Cal. Oct. 8, 2009). The District Courts within California are split. The Northern and Central Districts have consistently held that Section 377.34 conflicts; therefore pain and suffering damages are recoverable. *Cardinal v. Buchnoff*, 06CV72-MMA(BLM), 2010 WL 1337489, * 1 (S.D. Cal. Apr. 5, 2010). The Eastern District has consistently held no conflict; therefore pain and suffering damages are not recoverable. (*Id.*). The Southern District has issued conflicting opinions. *Hirschfield, supra; Cardinal, supra,* * 2.

Defendants urge this Court to adopt the view of the Eastern District, and the Southern District in *Cardinal*. The purpose of Section 1983 is to prevent illegality, and compensate for injuries caused by

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                    Case No: 4:12-cv-00372 DMR

constitutional rights. Section 377.34 adheres to these purposes, and is thus consistent with the federal statute. It allows for compensation (via compensatory damages), and deters future illegality through recovery of punitive damages. Indeed, that is the entire purpose of punitive damages: "[p]unitive damages are awarded in the jury's discretion to punish [the defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith v. Wade*, 461 U.S. 30, 54 (1983) (internal citation and quotations omitted). The U.S. Supreme Court has upheld this principle numerous times since *Smith. See Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001); *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 492-493 (2008).

For these reasons, the Estate's claim for pain and suffering damages should be dismissed.

## C. Chris Hill Not Entitled to Wrongful-Death Claim under 42 U.S.C. § 1983

The Complaint's second cause of action is for wrongful-death, pursuant to 42 U.S.C. § 1983. It is alleged against Officer Crowell and Lee. Such a cause of action -- while recognized -- is a personal one, to be brought by those permissible individual(s), for his or her harm stemming from decedent's death.

The plaintiff in this case is the Estate of Charles Hill. While Mr. Chris Hill is the personal representative for the Estate of Charles Hill, he is <u>not</u> suing individually, for his own alleged injuries. See Paragraphs 3-4 of the Complaint. Lacking any individual plaintiff, there is insufficient standing to prosecute the § 1983 wrongful-death. As a matter of law, it should be dismissed.

Defendants oppose any request by Plaintiff to amend the Complaint to add Chris Hill, individually, as a plaintiff. This litigation is more than 18 months old. The parties are at the dispositive motion stage, with trial four months away. Plaintiff had the last year and a half to recognize and correct any pleading deficiencies. It failed to do so. Defendants should not be prejudiced (with an amended complaint) for having asserted this deficiency in their Motion for Summary Judgment, and for requesting dispositive relief. Defendants are entitled to the dispositive relief they asserted.

Moreover, the second cause of action is wrong as a matter of law. The cause of action is premised upon: (1) unreasonable search and seizure (Fourth and Fourteenth Amendments); excessive force (Fourth and Fourteenth Amendments); and due process (Fourteenth Amendment).

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                        Case No: 4:12-cv-00372 DMR

The Fourteenth Amendment claims for unreasonable search and seizure, and excessive force, fail because the claims are -- in actuality -- Fourth Amendment claims. As explained by the U.S. Supreme Court in *U.S. v. Lanier*, 520 US 259 (1997), "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate--specific provision, not under the rubric of substantive of due process." (*Lanier*, *supra*, at 272, n. 7). In *Graham v. O'Connor*, 490 U.S. 386 (1989), the Supreme Court specifically held that excessive force claims brought pursuant to an investigatory stop, arrest, or other "seizure," may only be brought under the Fourth Amendment (*Graham*, *supra*, at 395). Because the alleged constitutional violations sound in decedent's seizure, as well as the force used against him, they may only be brought under the Fourth Amendment.

With respect to the Fourth Amendment, the claims for excessive force and unreasonable and seizure are improper because "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir.1987)." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). Accordingly, even if Mr. Chris Hill was an individual plaintiff, he could not assert decedent's Fourth Amendment rights for purposes of a wrongful-death claim.

The Fourteenth Amendment Due Process claim fails because such claims may not be brought by siblings. *Rentz v. Spokane Cnty.*, 438 F. Supp. 2d 1252, 1265 (E.D. Wash. 2006) ["The Ninth Circuit has held that a sibling does not possess a constitutionally protected liberty interest in the companionship of another sibling."] (citing *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992).) As explained by the *Ward* Court, "[n]either the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children." *Ward*, supra, at 284.

For these reasons, the second cause of action fails as a matter of law and should be dismissed.

### D.  Chris Hill Not Entitled to Wrongful-Death Claim under State Law

The Complaint's fifth cause of action is for state-law wrongful-death negligence, pursuant to C.C.P 377.60 and 377.61. It is alleged against Officer Crowell and Lee. This cause of action fails for

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                     Case No: 4:12-cv-00372 DMR

1 the same reason as the excessive force allegation: Officer Crowell's use of force was reasonable and
2 justified, under the law. The fifth cause of action should be dismissed.

3 **E.**     **No Liability Under Civil Code § 52.1**

4     The Complaint's sixth cause of action is brought pursuant to California Civil Code § 52.1,
5 which provides a cause of action for interference, or attempting to interfere, "by threats, intimidation, or
6 coercion" with state or federal constitutional rights. (Cal. Civ. Code §§ 52.1(a) and (b).)  The survival
7 cause of action alleges general violations of decedent's constitutional rights.

8     As detailed in Sections III(B)(2), reasonable force was used against decedent. Accordingly, no
9 violation of decedent's constitutional rights occurred, and Defendants cannot be held liable under Civil
10 Code § 52.1. The sixth cause of action should be dismissed.

11 **F.**     **No *Monell* Liability Because No Unconstitutional Custom, Policy, or Practice**

12     Under *Monell*, municipalities may be held liable for an unconstitutional custom, policy, or
13 practice. *Monell*, *supra*, at 690. Under Ninth Circuit precedent, *Monell* liability may be established one
14 of three ways: (1) proof that municipal employee committed the alleged constitutional violation
15 pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the
16 standard operating procedure of the local governmental entity; (2) proof that the individual who
17 committed the constitutional tort was an official with final policy-making authority and that the
18 challenged conduct was thus an act of official government policy; or (3) proof that an official with final
19 policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.
20 *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).

21     The same standards apply to the allegations against Chief Rainey, as well as the other individual
22 defendants sued in their official capacity. The government entity is the real party in interest, meaning
23 that a plaintiff must show that the entity's policy or custom played a part in the violation of federal law.
24 See *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

25     Plaintiffs' Complaint alleges the first prong: custom, policy, or practice. (*Docket No. 1*, ¶ 33).
26 Specifically, the Complaint alleges: (1) unconstitutional policies and customs; and (2) inadequate
27 training, supervision, and discipline. (*Id.*, at ¶¶ 34-38). To the extent Plaintiffs claim they alleged any
28 other basis for their *Monell* claim, Defendants reserve the right to address those other arguments.

### 1. BART Policies Are Consistent with Both Controlling Authority and a Regard for the Constitutional Rights of the Public.

Since 2009, BART has utilized Lexipol for its policies. At the time of the incident, it had policies concerning: (1) Use of Force (Policy 300); (2) Use of Force Review Board (Policy 302); (3) Shooting Policy (Policy 304); (4) Officer-Involved Shooting (Policy 310); (5) Firearms (Policy 312); (6) Officer Response to Calls (Policy 316); (7) Search and Seizure (Policy 322); (8) Report Preparation (Policy 344); and (9) Death Investigation (Policy 360). The use-of-force policy (300) tracked the Supreme Court's holding in *Graham*, *supra*.

### 2. BART's Custom is to the Adherence to Law, Restraint in the Use of Force, and Continuous Improvement

Any allegedly unconstitutional custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691. Indeed, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Id.* at 920. The Ninth Circuit has even found that two incidents alone is not sufficient to impose *Monell* liability. *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.1988).

The alleged incident here does not demonstrate a widespread custom, policy or practice within BART of constitutional rights violations (including those violations alleged by the Estate). First, no such violations occurred. Without a violation by defendant officers, BART cannot be held liable for custom allegedly causing any purported violation(s). *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Second, a single incident is insufficient to establish a custom or practice (unless proof of the incident includes proof that it was caused by an existing, unconstitutional local government policy, which policy can be attributed to a local government policymaker). *Meehan*, *supra*, at 107. As demonstrated above, the Department's policies in effect at the time of the incident were constitutional.

///

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                    Case No: 4:12-cv-00372 DMR

BART's past history fails to demonstrate a widespread custom, policy or practice, in the BART Police Department, of violating constitutional rights (including those rights alleged by the Estate). Out of the approximately 273,000 calls for service from 2005-2011 (inclusive), BART Police displayed a firearm in low/cover position 260 times; drew and pointed at a suspect 159 times; and drew, pointed and discharged a firearm 4 times. Those 4 times represent approximately one-thousandth of one percent of all contacts. None of the four (thru July 2, 2011) were by Officers Crowell or Lee.

Out of those same approximately 273,000 calls for service, only 166 resulted in complaints: approximately six one-hundredths of one percent of all contacts. None showed a custom, policy or practice of widespread constitutional violation by Officers Crowell or Lee, as none of the complaints were against them.

### 3. BART's Training Program Exceeded POST Standards, and the Department Anticipated and Corrected Potential Shortcomings

Allegations of inadequate training, supervision and discipline are governed by the standards set forth in *City of Canton v. Harris*, 489 U.S. 378 (1989). See *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989); see *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). It is not enough for a plaintiff to show that better or more training could have averted harm, especially where the deficiency did not represent a conscious choice by defendant to expose plaintiff to injury. *Ting v. U.S.*, 927 F.2d 1504, 1512 (9th Cir. 1991). Moreover, a single incident of deviant behavior does not demonstrate inadequate training. *Merritt v. County of Los Angeles*, 875 F.2d 765, 769 70 (9th Cir. 1989). Under *City of Canton*'s standard, BART may only be liable if Plaintiffs establishes (1) that they possessed a constitutional right of which they were deprived; (2) that BART had a policy amounting to "deliberate indifference" to their constitutional right; and (3) that the policy was the "moving force" behind the constitutional violation. See *Oviatt*, 954 F.2d at 1474 (citing *City of Canton*, 489 U.S. at 389 391).

Sustaining a claim for deliberate indifference in training requires a showing of (1) continued adherence to a deficient training policy despite actual or constructive knowledge that the policy has failed to prevent tortious conduct in the past; or (2) in the absence of a pattern of tortious conduct, failure to equip officers with tools to handle situations likely to recur. *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 1187 (9th Cir. 2006) (citing *Board of County Commissioners v. Brown*, 520 U.S.

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                              Case No: 4:12-cv-00372 DMR

397 (1997)). Here, Plaintiff cannot meet either requirement set forth in *Long*, and Defendants are thus entitled to judgment as a matter of law.

Plaintiff's inadequate training and supervision claim fail as a matter of law because the Department's mandated training program meets and exceeds the standards set forth by the state's Commission on Police Officer Standards & Training ("POST"). At the time of the incident, the Department and all its officers (include Crowell and Lee) were POST-certified. All BART officers (including Crowell and Lee) had successfully completed the Academy, Fielding Training, FOCUS training, and update training. Crowell and Lee had gone to Academies that required hours well in excess of the 664 minimum for completion. The FOCUS was an additional training program above and beyond that required by POST. Moreover, BART provided its officers with daily briefings that included new or updated case law or policies. BART also provided hard-copies any of Lexipol policy updates. Lastly, BART required documentation and review of incidents in which less-lethal or lethal force is used and/or displayed by officers.

Plaintiff's inadequate discipline claim fails because BART maintained a system for discipline consistent with California Penal Code § 832.5. BART had a policy for receiving citizen complaints and investigating the allegations, and did investigate them. It received 166 citizen complaints from 2005 until July 3, 2011, investigating each and every one of them. None were ignored. This attention illustrates BART's active concern for the rights of the public.

Plaintiff's inadequacy-related *Monell* claim also fails because there is no evidence of deliberate indifference by BART towards constitutional rights. On the contrary, BART's use of a rigorous training, supervision, and disciplinary program demonstrates BART's conscious for, and respect of, proper policing and the constitutional rights of those citizens its officers come into contact with.

Plaintiff's inadequacy-related *Monell* claim further fails because there is no evidence that any alleged inadequacy in training, supervision or discipline was the moving violation behind any alleged constitutional violation.

### G. **Punitive Damages**

The Complaint seeks punitive damages against Chief Rainey, Officer Crowell, and Officer Lee, under both state and federal law. Punitive damages against Chief Rainey should be dismissed because

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                                    Case No: 4:12-cv-00372 DMR

he is only sued in his official capacity. The punitive damages claim against Crowell and Lee (in their official capacities) should also be dismissed. Suing in official capacity is equivalent to suing the public entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ["an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."]. Public entity BART is immune from punitive damages under 42 U.S.C § 1983, and under California law. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); Government Code § 818. Accordingly, Chief Rainey, Officer Crowell, and Officer Lee are likewise immune.

### 1. <u>No Punitive Damages Under Federal Law</u>

A plaintiff is allowed to recover punitive damage in a Section 1983 case, where the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983).

There is no evidence that Officers Crowell or Lee used force against decedent, with evil intent or motive, or reckless or callous indifference to his civil rights. Crowell only used force to defend himself against a deadly threat, against an individual who had thrown a glass bottle at him, who had ignored commands to drop a knife, and who, despite those commands, continued walking forward and wound up his arm to throw the knife at Crowell. Lee only responded to the call of a drunk, agitated man on the BART platform at Civic Center. He had no role in the use of force against decedent, and was on the ground when it occurred.

Rather than evil intent or callous indifference, Officer Crowell's conduct demonstrates justifiable concern for his well-being, and that of his partner and the civilians on the platform. Officer Lee's conduct shows an officer conscientiously doing his duty, and responding to a call.

There is no evidentiary basis for federal punitive damages against either Crowell or Lee (in their individual capacities). This claim for relief should be dismissed.

### 2. <u>No Punitive Damages Under State Law</u>

Pursuant to Civil Code § 3294(a), a plaintiff may only recover punitive damages where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civil Code § 3294 (West 1997.) Section 3294(c)(1) defines malice as conduct which is

intended to cause injury to the plaintiff or despicable conduct carried on with a willful and conscious disregard of the rights or safety of others. (*Id.*) Section 3294(c)(2) defines oppression as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id.*)

Punitive damages are disfavored under California law and such damages "should be viewed with the greatest caution." *Beck v. State Farm Mutual Automobile Insurance Co.* (1976) 54 Cal.App.3d 347, 355.

Just as there is no evidentiary basis for punitive damages under federal law, there is no evidentiary basis under state law. This is even more so given the higher evidentiary threshold under state-law: clear and convincing evidence. As explained above, there is no simply no support for the notion that Officers Crowell or Lee acted with malice, oppression, or fraud.

For these reasons, Plaintiff's prayer for state-law punitive damages against Crowell and Lee (in their individual capacities) should be dismissed.

**IV.** **CONCLUSION**

For these reasons, Defendants respectfully request the Court grants its Motion for Summary Judgment/Summary Adjudication.

Dated: July 25, 2013

LOW, BALL & LYNCH

By_____/s/_____Kevin P. Allen_____
DALE L. ALLEN, JR.
KEVIN P. ALLEN
Attorneys for Defendants
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT (SUED AS BAY AREA RAPID TRANSIT DISTRICT) (HEREINAFTER "BART"); KENTON RAINEY IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE FOR BART; JAMES CROWELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR BART; AND MYRON LEE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A POLICE OFFICER FOR BART

-24-

DEFENDANTS' AMENDED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT/ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 56)

J:\1752\sf0226\MSJ\MSJ-MPA-(Amended).docx                Case No: 4:12-cv-00372 DMR